CLAPP BROS. & CO. v. SOHMER & CO.

1. **Stoppage in Transitu**: EVIDENCE: INSOLVENCY OF CONSIGNEE. Upon a question as to the right of stoppage *in transitu* evidence of the insolvency of the consignee is admissible, although the purchase price of the goods is not due.

2. **Practice**: EFFECT OF STIPULATION. A stipulation between the parties to a suit cannot bind one who afterward intervenes in the action claiming adversely to both plaintiff and defendant.

3. **Stoppage in Transitu**: TRANSFER BY CONSIGNEE: GOODS SOLD ON CREDIT. An agreement by a consignee before the receipt of goods to transfer the same to another does not deprive the consignor of the right of stoppage *in transitu;* neither will the acceptance by the consignor of a promissory note for the purchase price of the goods.

*Appeal from Bremer District Court.*

THURSDAY, DECEMBER 16.

THE plaintiffs sued out an attachment against H. C. Peck, which on the 31st day of December, 1879, was levied on certain personal property said to belong to Peck. Among such property was "one Sohmer & Co. piano." Afterward, on February 3, 1880, the Bank of Waverly intervened in the action, and claimed all or a portion of the property levied on under a chattel mortgage. Thereupon a stipulation was entered into between the plaintiffs, Peck and the bank, whereby it was agreed the bank should hold a certain portion of said property under the mortgage and the plaintiffs the residue under the attachment, and judgment was accordingly rendered. Among the property so held by the plaintiffs was said piano. Afterward, on February 6, 1880, the defendants by leave of the court intervened in said action, and claimed said piano as their property. As to this intervention there was a trial to the court, judgment for the defendants, and plaintiffs appeal.

VOL. LV—18.

Clapp Bros. & Co. v. Sohmer & Co.

*E. A. Dawson*, for appellants.

*E. L. Smalley*, for appellees.

SEEVERS, J.—The defendants, who reside in New York, sold and shipped the piano to Peck at Waverly, Iowa. He became insolvent, as is claimed, before the piano was delivered, and the defendants claimed the right to stop it while in transit. When levied on under the attachment it was in a railroad car at Waverly, and Peck had not taken possession thereof. The errors discussed by counsel are:

I. The defendants sought to prove by Peck that he was insolvent, and unable to pay for the piano. It is said such
1. STOPPAGE ·evidence was inadmissible because the purchase
in transitu:
evidence : in- money was not due at the time it was sought to
solvency of
consignee. establish such fact. As we understand, the right to stop goods in transit is based on the insolvency of the vendee, and it makes no difference in this respect whether the purchase money is due or not when insolvency occurs. 1 Parsons on Contracts, 595. It follows that evidence tending to establish such fact was both material and admissible. See *Clapp v. Peck, ante*, 270.

II. The court refused to admit in evidence the stipulation between the plaintiffs, Peck and the bank, and the judgment
2. PRACTICE: rendered in accord therewith. As the defendants
effect of stip-
ulation. were not parties thereto it would seem to follow their rights could not be prejudicially affected thereby. It is, however, said Peck had the right to sell the piano, and if he did so to a good faith purchaser without notice, the latter would be protected against the claim of defendants. The fallacy in this argument is the plaintiffs were not purchasers. The piano was seized under the process of the court while in transit, and being in possession of the law the said parties stipulated the plaintiffs should hold the same under the attachment. The stipulation only settled a controversy between the plaintiffs, Peck and the bank, and thereunder the

plaintiffs did not as against the defendants obtain any additional rights to what they had if it had never been made.

III. The plaintiffs asked Peck, when on the stand as a witness, "what was your understanding when the piano was levied upon, whether it was your property or not." An objection to this question was properly sustained. What Peck's understanding was, under no circumstances nor for any purpose, was competent evidence. The plaintiff also offered to prove that before the right of stoppage was exercised, or contract of sale rescinded, it was agreed the "piano should be turned over to the plaintiffs" by Peck for a valuable consideration. It will be noticed that plaintiffs did not offer to prove Peck had in fact delivered possession to them, but only that it was agreed he should do so. Peck did not have the power to deliver possession to the plaintiffs for the reason he did not have the possession or the right thereto.

3. STOPPAGE in transitu: transfer by consignee: goods sold on credit.

IV. On the 16th day of January, 1880, Peck executed his note to the plaintiff, payable two months after date, for what he claimed to be the purchase price of the piano which was received by the defendants. It is said that a right to a lien does not exist when credit has been given. In support of this proposition 3 Parsons on Contracts, 266, is cited. This authority has no application to the case in hand. It is said the defendants are concluded by their acceptance of the note; we do not think so. There is no evidence tending to show they had any knowledge of the insolvency of Peck. Merchandise is usually sold on credit, and if the right of stoppage in transit can only be exercised after the purchase money becomes due it would be practically worthless. A promissory note cannot be regarded as a payment unless it has been expressly received as such.

AFFIRMED.